UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS EXECUTIVE OFFICE OF THE TRIAL COURT,<br><br>               Plaintiff,<br><br>   v.<br><br>AGENT BRIAN SULLIVAN,<br><br>               Defendant. | Civil Case No. 25-10769-WGY |

## MEMORANDUM IN SUPPORT OF BRIAN SULLIVAN'S MOTION TO VACATE

On March 31 and April 1, 2025, a single state court judge of the Boston Municipal Court issued a finding of contempt against United States Immigration and Customs Enforcement ("ICE") Officer Brian Sullivan for arresting a criminal alien with no lawful status in this country pursuant to federal law. The state court lacked authority to issue that patently unlawful and erroneous order. The Supremacy Clause of the United States Constitution immunizes federal officers, such as Officer Sullivan, from state prosecution—including contempt proceedings—for actions taken in the course of their official duties. The state court's order nonetheless found Officer Sullivan in contempt for exercising core law enforcement and immigration responsibilities pursuant to, and authorized by, the Immigration and Nationality Act ("INA"). This damaging state intrusion into federal functions is the precise harm that the Supremacy Clause guards against. The state court's order disregards bedrock principles of federalism and inflicts an unacceptable burden (and ongoing threat of criminal prosecution) on a duly authorized federal official. This Court should immediately vacate the state court order.

1

I. **BACKGROUND**

A. **Legal Background**

The Supremacy Clause provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., art. VI, cl. 2. Thus, under our Constitution, "the states have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by congress to carry into execution the powers vested in the [federal] government." *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 436 (1819). Indeed, "two centuries of case law prohibit the States from taxing, regulating, or otherwise interfering with the lawful work of federal agencies, instrumentalities, and officers." *Trump v. Vance*, 591 U.S. 786, 830–31 (2020) (Alito, J., dissenting) (collecting cases).

"Although the Supremacy Clause explicitly refers only to the 'Constitution' and 'Laws,' its implication is that states may not impede or interfere with the actions of federal executive officials when they are carrying out federal laws." *Wyoming v. Livingston*, 443 F.3d 1211, 1217 (10th Cir. 2006). "It is not necessary for Congress to provide expressly for such immunity in the statutes under which federal officials act; Supremacy Clause immunity is 'incidental to, and is implied in the several acts by which these [federal] institutions are created, and is secured to the individuals employed in them, by the judicial power alone.'" *Id.* (quoting *Osborn v. Bank of United States*, 22 U.S. (9 Wheat.) 738, 865–66 (1824) (Marshall, C.J.)).

Based on these principles, the Supreme Court has recognized a Supremacy Clause immunity for federal officials performing federal functions. As set forth in *In re Neagle*, if a federal official "is held in the state court to answer for an act which he was authorized to do by the

law of the United States, which it was his duty to do as [an official] of the United States, and if, in doing that act, he did no more than what was necessary and proper for him to do, he cannot be guilty of a crime under the law of the state." 135 U.S. 1, 75 (1890). "Thus," as the First Circuit has recognized, "federal officials are generally granted Supremacy Clause immunity from state prosecution for actions taken in the course of their official duties." *Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 68 (1st Cir. 2007); *see also Massachusetts v. Hills*, 437 F. Supp. 351, 352 (D. Mass. 1977) ("a federal officer cannot be subject to prosecution under the criminal laws of any State . . . if the act done was one which the officer was authorized to do by the law of the United States, the act was a part of the officer's duties, and in doing that act, the officer did no more than was necessary and proper for him to do").

### B. Factual Background

The state court's contempt order arose from the Commonwealth's prosecution of a 49-year-old citizen of the Dominican Republic named Juan Carlos Baez, also known as Wilson Martell-Lebron (the "Defendant"). *See Commonwealth of Massachusetts v. Wilson Martell-Lebron*, No. 2001AC000480 (Mass. Dist. Ct. 01/2020). Defendant is a criminal alien who entered the United States illegally and has no lawful status allowing him to remain in the country. Declaration of D. Wesling ("Wesling Decl.") ¶ 5, attached hereto as <u>Exhibit A</u>. His criminal history includes convictions for trafficking cocaine over 200 grams in violation of M.G.L. Chapter 94, Section 32; trafficking cocaine over 28 grams, in violation of M.G.L. Chapter 94, Section 32; and trafficking heroin over 14 grams, in violation of M.G.L. Chapter 94, Section 32. *Id.* ¶ 10. Defendant was also convicted of the offenses of trafficking controlled substances over 28 grams,

3

in violation of M.G.L. Chapter 94, Section 32 and trafficking controlled substances over 14 grams, in violation of M.G.L. Chapter 94, Section 32. *Id.* ¶ 11.[1]

Over the course of several encounters beginning in 2007, ICE investigated Defendant's immigration status and determined that he was removable pursuant to INA § 212(a)(6)(A)(i) as an alien present in the United States without having been admitted or paroled. *Id.* ¶ 6. Based upon this investigation, on October 4, 2007, an ICE Supervisory Special Agent signed a Form I-200, Warrant for Arrest of Alien, authorizing Defendant's arrest. *Id.* ¶ 8. Nonetheless, for several years, ICE was unable to detain Defendant and place him into removal proceedings. *Id.* ¶ 13.

In January 2020, the Commonwealth charged Defendant with two felony counts for falsifying Motor Vehicle and Registry of Motor Vehicle documents. Doc. No. 1-3 at 3. Defendant was arraigned on January 23, 2020, in the Boston Municipal Court, Central Division. *Id.* His trial did not, however, commence until five years later. *Id.* at 14.

On March 27, 2025, Defendant arrived at the Boston Municipal Court for his trial before Associate Justice Mark H. Summerville. *See id.*; Wesling Decl. ¶ 15. After the proceedings concluded for the day, Defendant departed the courthouse from a rear exit. *Id.* Upon leaving, Defendant encountered several ICE officers, including Officer Brian Sullivan, who works as a Supervisory Detention and Deportation Officer at the ICE Enforcement and Removal Operations Boston Field Office. *Id.* The ICE officers identified themselves and asked Defendant to stop. *Id.* Defendant, however, quickly began moving in the opposite direction. *Id.* At that point, the ICE

---

[1] On April 19, 2017, the Essex Superior Court vacated and dismissed convictions against Defendant for trafficking controlled substances over 28 grams in violation of M.G.L. Chapter 94, Section 32 and trafficking controlled substances over 14 grams in violation of M.G.L. Chapter 94, Section 32. Wesling Decl. ¶ 12.

officers—including Officer Sullivan—seized Defendant and effectuated his arrest pursuant to INA § 236. *Id.*

Defendant's counsel then moved to dismiss the criminal case and sought sanctions based on Defendant's arrest. Doc. No. 1-3 at 15. The state court, in turn, issued an order directing Officer Sullivan—"as well as any ICE Agents involved in the arrest of the defendant on March 27, 2025"—to appear for an "Evidentiary Hearing" on Defendant's motion. *Id.* The United States promptly sought to remove the proceeding to federal court, based on the state court's lack of jurisdiction to compel the testimony of a federal official. *See Massachusetts Executive Office of the Trial Court v. Sullivan et al.*, No. 1:25-cv-10737-GAO (ECF 1). Nonetheless, the state court proceeded, and on April 1, 2025, issued a "Finding of Contempt Pursuant to Mass. Rule of Criminal Procedure 44." Doc. No. 1-5 at 1.

Massachusetts Rule of Criminal Procedure 44 authorizes contempt referrals to a state prosecutor for potential prosecution before "a judge other than the trial judge" who issued the referral. Mass. R. Crim. Pro. 44(a), (c). Nevertheless, the state court judge here went ahead and summarily issued an order "find[ing] [ICE] Agent Brian Sullivan in contempt pursuant to Mass. R. Crim. Pro. 44." Doc. No. 1-5 at 1. The state court based this finding expressly upon Officer Sullivan's federally authorized actions in "arresting the defendant" following the state court "recessing [Defendant's] trial for the day." *Id.* at 2. The state court found that this arrest "prevent[ed] the defendant from being present at his jury trial." *Id.* The state court reasoned that this valid federal arrest allegedly violated Defendant's right "to be present at all critical stages of the proceedings," and thereby constituted obstruction of justice. *Id.* at 1.

## II. ARGUMENT

This Court should vacate the state court's contempt order based on a straightforward application of Supremacy Clause immunity. Under *Neagle*, a federal official may not be held in contempt by a state court "for an act which he was authorized to do by the law of the United States, which it was his duty to do as [an official] of the United States, and if, in doing that act, he did no more than what was necessary and proper for him to do." 135 U.S. at 75. Accordingly, "a state court has no jurisdiction" to issue a contempt order "if (1) the federal agent was performing an act which he was authorized to do by the law of the United States and (2) in performing that authorized act, the federal agent did no more than what was necessary and proper for him to do." *Commonwealth of Kentucky v. Long*, 837 F.2d 727, 744 (6th Cir. 1988); *see also, e.g.*, *Colorado v. Nord*, 377 F. Supp. 2d 945, 951 (D. Colo. 2005) (Supremacy Clause immunity under *Neagle* "denie[d] the state court of jurisdiction to hold Respondents in contempt for their conduct.").

*First*, Officer Sullivan's arrest of Defendant was plainly authorized—indeed, compelled—by federal law, namely, the INA. To be clear, this inquiry does not ask whether the official's actions were specifically authorized by a federal statute, but whether they fell within "the general scope of the officer's duties." *Baucom v. Martin*, 677 F.2d 1346, 1350 (11th Cir. 1982). Of course, here, that distinction is of no moment because Officer Sullivan's actions were *expressly authorized* by a federal statute. Section 236(c) of the INA provides that the Attorney General, acting through her designated law enforcement officials, "*shall* take into custody any alien who" meets the criteria specified by paragraph (c). 8 U.S.C. § 1226(c) (emphasis added). Here, ICE determined that Defendant met the criteria specified by paragraph (c), and in fact authorized a valid arrest warrant for Defendant pursuant to Section 236(c). It is therefore clear beyond cavil that, in arresting

6

Defendant, Officer Sullivan was performing "an act which he was authorized to do by the law of the United States." *Neagle*, 135 U.S. at 75.

*Second*, Officer Sullivan "did no more than what was necessary and proper for him to do" in effectuating Defendant's arrest. *Id.* In determining whether a federal officer's actions were "necessary and proper" in this context, courts apply an objective inquiry and ask whether "the agent had an objectively reasonable and well-founded basis to believe that his actions were necessary to fulfill his duties." *Livingston*, 443 F.3d at 1222. Put another way, courts ask "whether the officers' acts had a 'nexus' with furthering federal policy and complied with federal law." *Kordash v. United States*, 51 F.4th 1289, 1294 (11th Cir. 2022). Officer Sullivan's actions, again, easily satisfy this standard. Because the INA mandates the detention of the individuals described in Section 236(c), and because Defendant met the criteria described in Section 236(c), it follows *a fortiori* that Officer Sullivan had an objectively reasonable and well-founded basis to believe that detaining Defendant was necessary to fulfill his duties. There is no reasonable dispute that Officer Sullivan's arrest of Defendant furthered federal immigration policy and complied with the INA.

The fact that this arrest occurred in between trial days during the Commonwealth's prosecution of Defendant—and thus, in the state court's (mistaken) view, violated Defendant's right to attend his trial—does not alter the analysis. The whole point of Supremacy Clause immunity is that federal law—not state law, state authorities, or state proceedings—must govern the conduct of federal officials in carrying out their federal duties. *See Tennessee v. Davis*, 100 U.S. 257, 263 (1879) ("No State government can exclude [the federal government] from the exercise of any authority conferred upon it by the Constitution, [or] obstruct its authorized officers against its will."). Thus, a federal official carrying out his duties is not "obliged to consider state criminal law *at all* before acting." Seth P. Waxman & Trevor W. Morrison, *What Kind of

7

*Immunity? Federal Officers, State Criminal Law, and the Supremacy Clause*, 112 Yale L.J. 2195, 2233 (2003) (emphasis added). Moreover, and in any event, while a state-court criminal defendant may have a right not to be tried and convicted *in absentia*, the state court identified no right to be free from federal apprehension on federal law violations while a state-court prosecution remains pending—nor is there one.[2]

In sum, Officer Sullivan has Supremacy Clause immunity for his actions, and the state court lacked jurisdiction to issue the contempt order against him. Officer Sullivan was plainly and properly acting in accordance with his federally mandated functions as a federal law enforcement official when he arrested Defendant pursuant to the INA. Moreover, not only does the state court's order intrude upon the Federal Government's exclusive power to investigate and prosecute violations of federal law, it also seriously undermines the Federal Government's plenary power over immigration. *See United States v. Texas*, 599 U.S. 670, 679 (2023) (emphasizing the Federal Executive's control "over arrests and prosecutions" for violations of federal law, which "extends to the immigration context"). The state court's contempt order cannot stand.

### III. CONCLUSION

The Court should vacate the state court's order finding Officer Sullivan in contempt.

    Respectfully submitted,

    LEAH B. FOLEY
    United States Attorney

---

[2] Moreover, the principle animating the state court's decision knows no bounds and would lead to absurd results. According to the state court judge, if federal agents arrested a defendant (who was out on bail) for committing a violent federal crime during the course of a state court trial, apparently the state court judge would nevertheless hold federal agents in contempt for obstruction of justice. Obviously, that result is contrary to common sense, and more importantly, the U.S. Constitution.

Dated: April 2, 2025           By:     /s/ Michael L. Fitzgerald
                                       RAYFORD A. FARQUHAR
                                       MARK SAUTER
                                       MICHAEL L. FITZGERALD
                                       Assistant United States Attorneys
                                       U.S. Attorney's Office
                                       1 Courthouse Way, Ste. 9200
                                       Boston, MA 02210
                                       (617) 748-3100
                                       rayford.farquhar@usdoj.gov
                                       mark.sauter@usdoj.gov
                                       michael.fitzgerald2@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants:

| | |
|---|---|
| *Counsel for the Commonwealth of Massachusetts* | *Counsel for Wilson Martell-LeBron* |
| Maria Romero | Murat Erkan |
| Assistant District Attorneys | Ryan Sullivan |
| Suffolk County District Attorney's Office | Erkan and Sullivan, P.C. |
| One Bulfinch Place | 300 High Street |
| Boston, MA 02114 | Andover, MA 01810 |

                                       /s/ Michael L. Fitzgerald
                                       MICHAEL L. FITZGERALD
                                       Assistant U.S. Attorney

Dated: April 2, 2025

9